IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**B.H., Individually and as Parent
and Natural Guardian of J.G., a minor,**

     **Plaintiffs,**

**v.**                                                                 **CASE NO.:**

**THE SCHOOL BOARD OF MANATEE COUNTY,
FLORIDA, and IRENE NIKITOPOULOS,**
          **Defendants.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, B.H., individually and as parent and natural guardian of J.G., a minor, (hereinafter referred to as "Plaintiff") hereby sues the Defendants, THE SCHOOL BOARD OF MANATEE COUNTY, FLORIDA (hereinafter referred to as "SBMC"), and IRENE NIKITOPOULOS (hereinafter referred to as "NIKITOPOULOS" and alleges:

## JURISDICTION AND VENUE

1. This is an action for damages that seeks relief pursuant to, inter alia, Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, et. seq., and 42 U.S.C. §1983 for the violation of civil rights securepd by the Fourteenth Amendment to the United States Constitution, together with supplemental claims for negligence arising under Florida law.

2.   This Court has subject-matter jurisdiction over the Title IX claim by virtue of federal-question jurisdiction pursuant to 28 U.S.C. §1331 and 20 U.S.C. §1681(a), et. seq.; over the claims arising under 42 U.S.C. §1983 pursuant to 28 U.S.C. §§1331 and 1343; and over the state-law negligence claims pursuant to the Court's supplemental jurisdiction under 28 U.S.C. §1367, because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.   At all material times, Plaintiff, B.H., the natural mother and legal guardian of J.G., was a resident of Manatee County, Florida.

4.   At all material times, J.G., a minor, was a resident of Manatee County, Florida.

5.   At all times material, Defendant, SBMC, was and is a political subdivision of the State of Florida, conducting business in Manatee County, Florida through the operation of a public middle school.

6.   At all times material, Defendant SBMC operated Carlos E. Haile Middle School (hereinafter "Haile Middle"), a public middle school located at 9501 E FL-64, Bradenton, FL 34212, in Manatee County, Florida, in which J.G. was enrolled as a student.

7.   At all times material, SBMC acted through its teachers, staff, employees, agents and/or servants operating Haile Middle and is accordingly liable for the acts

2

of such employees, agents and/or servants which were committed in the course and scope of their employment, agency, or service.

8. At all relevant times, OLIVER FELL (hereinafter "FELL"), was a resident of Manatee County, Florida and was employed by Haile Middle School as an 8th grade ESE teacher.

9. Venue is proper in the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §1391(b) because the Defendants reside in this District and because a substantial part of the events, acts, errors, and omissions giving rise to this action occurred in Manatee County, Florida, which lies within this District and Division.

### PARTIES

10. At all relevant times, J.G., a minor, resided with his natural parent and legal guardian, B.H., in Manatee County, Florida and was a student at Haile Middle assigned to FELL's 8th grade ESE classroom during the 2024-2025 school year.

11. At all relevant times, Haile Middle was and is now a public middle school within the school district operated by SBMC.

12. At all relevant times, SBMC is and was the governing body of the School District in Manatee County, Florida and is authorized to be sued for negligence by §§ 768.28(5)(a) and 1000.41(4), Florida Statutes.

3

13.    At all relevant times, OLIVER FELL was employed by SBMC as an 8th grade ESE teacher at Haile Middle, acting within the course and scope of her employment.

14.    At all relevant times, IRENE NIKITOPOULOS, was the principal of Haile Middle and was an "appropriate person" within the meaning of applicable law with the authority and institutional responsibility to investigate reports of misconduct, discipline employees, initiate reporting obligations and take corrective action to protect students from harm. Principal NIKITOPOULOS's authority and her responsibility in this regard derived from SBMC's own policies, Florida law, and her position as principal.

## CONDITIONS PRECEDENT

15.    A written Notice of Intent was presented to and filed with the Department of Insurance of the State of Florida and Defendant, SBMC, and served pursuant to §768.28(6) of the Florida Statutes by Certified Mail, Return Receipt Requested. A copy of the Notice of Intent is attached hereto as Exhibit "A."

16.    All other conditions precedent to the bringing of this action have been performed, have occurred, or have been waived.

4

## GENERAL ALLEGATIONS

### A.    SBMC's Existing Policies and Mandatory Obligations

17.    At all times material, SBMC had in place written policies, regulations, and legally-mandated obligations governing: (a) the supervision and conduct of its employees; (b) the mandatory reporting of child abuse, neglect or sexual misconduct; (c) the investigation of complaints involving student safety; (d) the provision of a safe learning environment free from harassment and abuse; and (e) other applicable policies and/or procedures. These policies were not discretionary as they imposed specific, non-discretionary operational duties on SBMC, its principals, its deans, and its teachers.

18.    Sections 1006.061 and 39.201, Florida Statutes imposed a mandatory, non-discretionary duty on SBMC and its employees, including FELL, and Principal NIKITOPOULOS, to report known or suspected child abuse, including sexual abuse and grooming, to the Department of Children and Families (hereinafter "DCF") and law enforcement. This duty arose upon any reasonable suspicion of abuse and admitted no discretion once triggered.

19.    At all times material, SBMC's own policies required its principals and administrators to investigate complaints of employee misconduct, to implement interim protective measures upon a notice of safety concern, and to escalate reports

of potential criminal conduct to the School Resource Officer and law enforcement. These duties were pre-existing, written and non-discretionary.

**B.    Fell's Pattern of Grooming, Harassment and Misconduct**

20.    J.G., a student at Haile Middle, was enrolled in FELL's 8th grade ESE critical thinking class during the 2024-2025 school year.

21.    Beginning in December 2024, FELL initiated contact with J.G. and other minor students via Snapchat, a social media platform, in violation of SBMC's existing policies and procedures.

22.    During this time, FELL sent J.G. sexually suggestive and/or explicit photographs of herself via Snapchat, including but not limited to topless photographs.

23.    J.G. showed these sexually explicit photographs to other students at Haile Middle.

24.    Other students at Haile Middle also received or were aware of communications from FELL through Snapchat, which FELL used, under the guise of communicating about campus access, to cultivate relationships with minor students outside of the supervision of school administrators.

25.    During December 2024, FELL also communicated with J.G. via TikTok, another social media platform, sending him personal and inappropriate messages, including but not limited to "I want to taste you with a winky eye emoji,"

asking J.G. whether he was, "pooping his pants," during an illness, and when asked by J.G. if she ever had sex before she says, "yes, but he had a small penis."

26. These communications were made outside of any legitimate educational context and outside the oversight of SBMC's administrators.

27. Each of these acts were committed by an SBMC employee, using platforms and methods designed to operate outside SBMC's supervision. Had SBMC's employee supervision policies and/or other applicable SBMC policies and procedures been followed and enforced, these acts would have or should have been observed, reported, and stopped.

28. After J.G. made comments to peers about having received the photographs, stating that FELL appeared "bigger in person than online," FELL began a pattern of retaliatory conduct against J.G., including initiating disciplinary referrals against him. This retaliation was carried out in FELL's capacity as J.G.'s teacher and through SBMC's own disciplinary mechanisms and constituted an abuse of the authority entrusted to FELL by SBMC.

29. FELL's retaliatory use of the disciplinary system against J.G. constituted misuse of SBMC's institutional authority and was carried out in the course and scope of FELL's employment. Had SBMC's supervisory and misconduct investigation policies and/or other SBMC's policies been properly followed, the

pattern of retaliatory referrals against J.G. would have been or should have been detected and stopped.

**C.    The March 3, 2025 Meeting and SBMC's Inadequate Response**

30.    On March 3, 2025, Principal NIKITOPOLOUS summoned Plaintiff, B.H., to Haile Middle for a conference. The meeting was held in a conference room and included B.H., Principal NIKITOPOLOUS, and the School Resource Office (hereinafter "SRO") assigned to Haile Middle.

31.    During this meeting, J.G. made a formal report to Principal NIKITOPOULOS regarding FELL's conduct. Rather than initiating a protective response, Principal NIKITOPOULOS responded by characterizing FELL as a "model teacher" who had denied the allegations and by stating that the claims appeared to be false.

32.    After the report was made during this meeting, interim protective measures were not implemented for J.G. in accordance with SBMC's own student safety policies and/or other applicable SBMC policies and procedures.

33.    The SRO present at the meeting told J.G. that there would be "repercussions for lying" and offered J.G. the opportunity to withdraw his report and in doing so he would not be suspended. The SRO then seized J.G.'s phone during the meeting.

34.    Other students who had witnessed the photographs stated that they denied knowledge when questioned because they feared being in trouble.

35.    SBMC's response to the March 3, 2025 report was clearly unreasonable and violated its own existing policies, including:

  a. Failing to take J.G.'s report seriously or implement any interim protective measures upon receiving a report of potential sexual misconduct by an employee toward a minor student, in violation of SBMC's existing student safety policies and/or other SBMC policies;

  b. Suspending J.G. for making a report of sexual misconduct, while characterizing his report as "false allegations" – conduct that constituted retaliation against J.G. for engaging in protected activity and that chilled the reporting of abuse;

  c. Permitting the SRO assigned to SBMC's campus to discourage J.G. from maintaining his report and to threaten him with consequences for reporting, in violation of SBMC's mandatory reporting obligations and/or other SBMC policies;

  d. Failing to immediately notify law enforcement or DCF upon receiving a report of potential criminal sexual conduct by a school employee against a minor student, in violation of §§1006.061 and 39.201, Florida Statutes;

  e. Otherwise failing to follow SBMC's own policies and/or procedures for responding to reports of employee misconduct involving a student; and

  f. Other conduct to be determined during the discovery process.

36.    Following the March 3 meeting, J.G.'s suspension was reclassified from "false allegations" to "sexual harassment." J.G. ultimately received a 10-day suspension and was thereafter enrolled in Florida Virtual School, effectively

9

removing him from his school community as a consequence of reporting FELL's conduct.

**D.    The Criminal Investigation and SBMC's Failure to Report**

37.    On March 3, 2025, M.G., who is the father of J.G., contacted DCF to report J.G.'s disclosures. M.G. also sent the then Superintendent of Manatee County Schools, Jason Wysong, an email with the subject line "CHILD ABUSE," with SBMC's Director of Secondary Education copied.

38.    On March 4, 2025, DCF commenced its investigation and J.G. was interviewed by DCF investigators and his account of FELL's conduct remained consistent.

39.    After DCF's initiation of its investigation, Detective Lake of the Manatee County Sheriff's Office (hereinafter "MSO") was assigned to the criminal investigation. A search warrant was obtained and executed on FELL's residence. Investigators compared the bedding and other items visible in the sexually explicit photographs sent to J.G. with items found in FELL's home. FELL was subsequently arrested and her phone was seized.

40.    Plaintiff B.H. informed Detective Lake that Principal NIKITOPOLOUS and the SRO had failed to report J.G.'s disclosures as mandatory reporters under Florida law.

10

41.    During the criminal investigation, J.G. disclosed to Detective Reyna of the MSO that FELL had communicated with him in a sexually explicit manner on Snapchat.

42.    At all times material, neither SBMC, Principal NIKITOPOLOUS nor the SRO made a timely report to DCF or law enforcement upon receiving J.G.'s March 3, 2025 report of sexual misconduct by FELL, in direct violation of their mandatory reporting obligations under §§1006.061 and 39.201, Florida Statutes. SBMC's failure to report and its active discouragement of J.G.'s report delayed the criminal investigation and prolonged J.G.'s exposure to harm.

43.    SBMC subsequently took no meaningful corrective action regarding FELL's continued employment, communications, or access to minor students and failed to implement appropriate safeguards for J.G. and other students who had been in contact with her, until such time she was arrested.

**E.    Damages**

44.    As a direct and proximate result of FELL's sustained campaign of grooming, inappropriate communications, retaliatory misconduct and harassment, and SBMC's repeated failure to detect, prevent, investigate, report and appropriately address the misconduct in accordance with its own existing policies and Florida law, J.G. has suffered and continues to suffer significant, permanent, and ongoing emotional, psychological, and educational harm.

45. Among other things, J.G. was denied the ability to participate in the 8th grade dance and end-of-year activities with his classmates, was required to attend summer school to make up for missed schoolwork and was prohibited from participating in football. These are activities that formed a meaningful part of J.G.'s social and developmental experience as a minor student.

46. J.G. was effectively expelled from his school community because of reporting FELL's misconduct, and was enrolled in Florida Virtual School in lieu of completing his 8th grade year with his peers.

**COUNT I: (AS TO SBMC)**
**VIOLATION OF TITLE IX OF THE EDUCATIONAL AMENDMENTS OF**
**1972, 20 U.S.C. §1681, ET. SEQ.**

47. Plaintiff realleges and incorporates by reference Paragraphs 1through 46 of the Complaint as if fully set forth herein.

48. At all times material, SBMC operated an educational program or activity that received federal financial assistance within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, et. seq.

49. Title IX provides, in relevant part, that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

50.    The sexual harassment and sexual abuse of a student by a teacher constitutes discrimination on the basis of sex prohibited by Title IX.

51.    FELL's conduct towards J.G., including her transmission of sexually explicit photographs of herself to J.G., her sexualized communications with him through Snapchat and TikTok, her exploitation of her position of authority and trust as his teacher, and her retaliatory use of SBMC's disciplinary system against him after the misconduct came to light, constituted harassment on the basis of sex that was so severe, pervasive, and objectively offensive that it deprived J.G. of access to the educational opportunities and benefits provided by SBMC.

52.    Principal NIKITOPOLOUS was an "appropriate person" under Title IX, an official with authority to institute corrective measures to end the discrimination, and SBMC, through them and through its other agents, had actual knowledge of FELL's sexual misconduct toward J.G., including by virtue of J.G.'s March 3, 2025 report and the circumstances described above.

53.    With actual knowledge of the sexual harassment, SBMC responded with deliberate indifference. Its response was clearly unreasonable in light of the known circumstances, including its failure to investigate J.G.'s report, its failure to implement interim protective measures, its characterization of FELL as a "model teacher," its suspension and punishment of J.G. for reporting, its discouragement of

13

his report through the SRO, and its failure to timely report to DCF and law enforcement as required by Florida law.

54. Specifically, upon receiving J.G.'s report on March 3, 2025, SBMC failed to initiate any Title IX investigation, failed to open any case file, failed to implement any interim protective measures for J.G., suspended J.G. as a consequence of his report, and permitted FELL to remain in her position without restriction until her subsequent arrest. At all times from March 3, 2025 through FELL's arrest, the assailant remained under SBMC's disciplinary authority and continued to have access to J.G. and other minor students. SBMC's complete failure to act from the moment of actual knowledge constitutes deliberate indifference and is the direct cause of J.G.'s further harm and deprivation of educational opportunity.

55. SBMC's deliberate indifference caused J.G. to undergo further harassment or made him liable or vulnerable to it, and effectively deprived him of access to the educational opportunities and benefits SBMC offered, including by causing his removal from his school community and his enrollment in Florida Virtual School.

56. As a direct and proximate result of SBMC's violation of Title IX, J.G. has suffered and continues to suffer significant, permanent, and ongoing educational, psychological, and other harm, together with the other damages described herein, for which SBMC is liable to the extent permitted under Title IX.

WHEREFORE, Plaintiff, B.H., individually and as the natural parent and guardian of J.G., a minor, demands judgment against the Defendant, THE SCHOOL BOARD OF MANATEE COUNTY, FLORIDA, for compensatory damages as allowed by law, costs, interest, attorneys' fees pursuant to 42 U.S.C. §1988 and other applicable law, and trial by jury on all issues so triable.

**COUNT II: (AS TO SBMC)**
**NEGLIGENCE OF DEFENDANT IN FAILING TO PROVIDE A SAFE**
**ENVIRONMENT**
**(Operational Failure to Follow Existing Policies)**

57.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 of the Complaint as if fully set forth herein.

58.    At all times material, SBMC owed J.G., as a minor student in its custody and care, a non-delegable duty to provide a safe educational environment free from physical, mental, and sexual misconduct by SBMC employees.

59.    SBMC had in place written policies and statutory obligations, including those identified above, designed to prevent, detect, and respond to exactly the type of harm suffered by J.G. SBMC's duty to provide a safe environment was not merely a general common-law duty; it was operationalized through specific, pre-existing, non-discretionary policies whose implementation required no policy-level judgment.

60.    SBMC breached its duty to provide a safe environment through the following operational failures to follow and enforce its own existing policies:

15

a. Failing to implement any safety or protective measures for J.G. upon receiving notice that FELL was communicating with minor students, including J.G., via Snapchat and TikTok outside the scope of her employment and outside SBMC's supervisory oversight, in violation of SBMC's existing student safety policies and other applicable SBMC policies and/or procedures;

b. Failing to investigate FELL's retaliatory referral campaign against J.G. following his receipt of the sexually explicit photographs, in violation of SBMC's existing misconduct investigation policies and other applicable SBMC policies and/or procedures;

c. Failing to advise B.H. or J.G. of any available protective policies, precautions or reporting procedures available to them as SBMC students and parents when placed in an unsafe condition, in violation of SBMC's existing notification obligations and other applicable SBMC policies and/or procedures;

d. Failing to ensure that SBMC's existing policies and protocols designed to protect students from abuse, misconduct, and grooming by school employees were implemented and followed by FELL, Principal NIKITOPOULOS, and other SBMC staff;

e. Failing to protect J.G. from an unsafe condition, namely FELL's grooming, harassment, inappropriate communications, and retaliatory misconduct, that SBMC knew or through the exercise of reasonable care should have known existed; and

f. Otherwise failing to provide for the safety and well-being of J.G.

61. SBMC engaged in a negligent mode of operation in the way it supervised, or failed to supervise, FELL and its school-level administrators. SBMC's systemic non-enforcement of its own existing supervisory, reporting, and safety policies created a foreseeable zone of risk that a school employee would

subject a minor student to grooming, inappropriate communications, harassment, and retaliatory abuse. J.G. suffered exactly this harm.

62. SBMC could reasonably anticipate, and in fact did anticipate as evidenced by the existence of its own written supervisory and reporting policies and other applicable SBMC policies and/or procedures, that failure to enforce these policies would create a dangerous condition in which a student could be harmed. J.G. suffered the exact harm those policies were designed to prevent.

63. The negligence described herein constitutes a failure by SBMC to carry out and follow the operational duties imposed by pre-existing policies and Florida law. These failures are not shielded by sovereign immunity because they involve the operational implementation and not the discretionary creation of existing policies.

64. As a direct and proximate result of SBMC's negligence, J.G. has incurred serious damages including, but not limited to: bodily injury; great physical pain and suffering; disability; inability and loss of capacity for the enjoyment of life; inconvenience; physical impairment; mental anguish; post-traumatic stress; loss or diminution if earnings or earning capacity; aggravation of existing conditions; permanent injury within a reasonable degree of medical probability; and past and future medical and mental health care expenses.

65.     These losses are permanent and continuing in nature, and J.G. will suffer them in the future as these injuries consist in whole or in part of a permanent injury within a reasonable degree of medical probability.

WHEREFORE, Plaintiff, B.H., individually and as the natural parent and guardian of J.G., a minor, demands judgment against Defendant, THE SCHOOL BOARD OF MANATEE COUNTY, FLORIDA, for compensatory damages as allowed by law, costs, interest and trial by jury on all issues so triable.

## COUNT III: (AS TO SBMC)
## NEGLIGENT SUPERVISION
### (Operational Failure to Follow Existing Policies)

66.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 46 of the Complaint as if fully set forth herein.

67.     Defendant owed J.G., as a student attending its school, a duty to properly supervise all students and school employees while under their care, custody, or control; to properly train and advise their employees regarding the correct way to supervise students; to properly train and advise employees regarding the correct procedures for reporting and investigating suspected misconduct, grooming, and sexual offenses involving students; and to otherwise operate their middle school in a reasonably safe manner; to provide a safe environment and to keep J.G. safe from physical, mental and sexual abuse.

68.    The Defendant breached its duty of care to J.G. through the following acts and omissions:

a.  Failing to prevent J.G. from being subjected to grooming, inappropriate communications, harassment and retaliatory misconduct on and off school grounds by a school employee;

b.  Failing to follow, enforce, and implement SBMC's existing policies and procedures designed to prevent physical and mental abuse of students by staff, including those policies requiring supervision of employee communications with minor students and mandatory reporting of suspected abuse;

c.  Failing to enforce the school's own policies and procedures regarding the prevention of abuse of students, including psychological abuse and grooming;

d.  Failing to keep J.G. free from sexual, physical, and mental abuse from a school employee whose misconduct was known to the school, or through the exercise of reasonable care should have been known to the school, prior to J.G.'s formal report on March 3, 2025.

e.  Failing to provide adequate and proper supervision of FELL and students, in order to prevent grooming, physical and mental abuse;

f.  Failing to provide sufficient and adequately trained staff and administrators in order to protect students, including J.G., from grooming and physical and mental abuse by school employees;

g.  Failing to adequately respond to reports and warning signs of FELL's misconduct once they became known;

h.  Failing to properly investigate reports of misconduct and grooming behavior by FELL;

i.  Failing to implement or enforce policies and procedures to address sexual misconduct and grooming by school employees on and off school grounds;

19

j. Retaliating against J.G. for making a report of sexual misconduct, suspending him and causing adverse educational consequences that effectively removed him from his school community;

k. Failing to provide sufficient and adequately trained staff and teachers to protect students, including J.G., from being subjected to a hostile learning environment;

l. Creating a hostile learning environment for J.G.; and/or

m. Otherwise failing to provide for the safety and well-being of J.G.

69. As a direct and proximate result of SBMC's negligence, J.G. has incurred serious damages including, but not limited to: bodily injury; great physical pain and suffering; disability; inability and loss of capacity for the enjoyment of life; inconvenience; physical impairment; mental anguish; post-traumatic stress; loss or diminution if earnings or earning capacity; aggravation of existing conditions; permanent injury within a reasonable degree of medical probability; and past and future medical and mental health care expenses.

70. These losses are permanent and continuing in nature, and J.G. will suffer them in the future as these injuries consist in whole or in part of a permanent injury within a reasonable degree of medical probability.

WHEREFORE, Plaintiff, B.H., individually and as the natural parent and guardian of J.G., a minor, demands judgment against Defendant, THE SCHOOL BOARD OF MANATEE COUNTY, FLORIDA, for compensatory damages as allowed by law, costs, interest and trial by jury on all issues so triable.

## COUNT IV: (AS TO SBMC)
## PARENTAL DAMAGES FOR CARE AND TREATMENT OF A MINOR CHILD

71.    Plaintiff, B.H., realleges and incorporates by reference Paragraphs 1 through 46 of the Complaint as if fully set forth herein.

72.    At all times material B.H. was the natural parent and legal guardian of J.G.

73.    As a direct and proximate result of the negligent acts and omissions of the Defendant, SBMC, Plaintiff, B.H., has or will incur damages including:

a. Bills for medical and mental health care and treatment obtained by B.H. for her child, J.G., in the past;

b. Bills for medical and mental health care and treatment to be obtained by B.H. for her child, J.G, in the future until J.G. reaches the age of 18;

c. Loss of earnings by B.H. resulting from the need to care or provide care for her child, J.G., in the past and to be incurred in the future until J.G. reaches the age of 18; and

d. Any and all other damages as allowable under Florida law.

WHEREFORE, Plaintiff, B.H., individually and as the natural parent and guardian of J.G., a minor, demands judgment against Defendant, THE SCHOOL BOARD OF MANATEE COUNTY, FLORIDA, for compensatory damages as allowed by law, costs, interest and trial by jury on all issues so triable.

## COUNT V: (AS TO NIKITOPOULOS)
## VIOLATION OF 42 U.S.C. §1983 – FOURTEENTH AMENDMENT

21

74. Plaintiff, B.H., realleges and incorporates by reference Paragraphs 1 through 46 of the Complaint as if fully set forth herein.

75. At all times material, NIKITOPOULOS was the principal of Haile Middle and acted under color of state law.

76. As a minor student compelled by law to attend school and entrusted to the care and custody of SBMC and its administrators, J.G. had a clearly established right under the Fourteenth Amendment to the United States Constitution to personal security and bodily integrity and to be free from sexual abuse and harassment by a school employee, as well as a clearly established right under the Equal Protection Clause to be free from discrimination and harassment on the basis of sex.

77. NIKITOPOULOS had actual knowledge of FELL's sexual misconduct toward J.G., including though J.G.'s March 3, 2025 report and the surrounding circumstances described above, and was aware of facts from which the inference could be drawn that a substantial risk of serious harm to J.G. existed.

78. With actual knowledge of the misconduct and substantial risk of serious harm to J.G., NIKITOPOULOS acted with deliberate indifference. Rather than take reasonable measures within her authority to protect J.G., she characterized FELL as a "model teacher," declined to investigate the report or implement any protective measures, allowed and ratified the punishment of J.G. for reporting, and failed to report the misconduct to DCF and law enforcement as required by Florida law.

79.    NIKITOPOLOUS's deliberate indifference exceeded mere negligence and gross negligence and was so egregious as to shock the conscience.

80.    NIKITOPOLOUS's acts and omissions were a moving force behind, and a direct and proximate cause of, the deprivation of J.G.'s constitutional rights and the resulting harm.

81.    As a direct and proximate result of NIKITOPOULOS's violation of J.G.'s constitutional rights, J.G. has incurred serious damages including, but not limited to: bodily injury; great physical pain and suffering; disability; inability and loss of capacity for the enjoyment of life; inconvenience; physical impairment; mental anguish; post-traumatic stress; loss or diminution of earnings or earning capacity; aggravation of existing conditions; permanent injury within a reasonable degree of medical probability; and past and future medical and mental health care expenses. These losses are permanent and continuing in nature.

WHEREFORE, Plaintiff, B.H., individually and as the natural parent and guardian of J.G., a minor, demands judgment against Defendant, NIKITOPOULOS, for compensatory damages as allowed by law, punitive damages as allowed by law, costs, interest, attorneys' fees pursuant to 42 U.S.C. §1988, and trial by jury on all issues so triable.

## COUNT VI: (AS TO NIKITOPOULOS)
## PARENTAL DAMAGES FOR CARE AND TREATMENT OF
## A MINOR CHILD

82. Plaintiff, B.H., realleges and incorporates by reference Paragraphs 1 through 46 of the Complaint as if fully set forth herein.

83. At all times material, B.H. was the natural parent and legal guardian of J.G.

84. As a direct and proximate result of the acts and omissions of NIKITOPOULOS, Plaintiff, B.H., has or will incur damages including:

   a. Bills for medical and mental health care and treatment obtained by B.H. for her child, J.G., in the past;

   b. Bills for medical and mental health care and treatment to be obtained by B.H. for her child, J.G, in the future until J.G. reaches the age of 18;

   c. Loss of earnings by B.H. resulting from the need to care or provide care for her child, J.G., in the past and to be incurred in the future until J.G. reaches the age of 18; and

   d. Any and all other damages as allowable under Florida law.

85. WHEREFORE, Plaintiff, B.H., individually and as the natural parent and guardian of J.G., a minor, demands judgment against Defendant, NIKITOPOULOS, for compensatory damages as allowed by law, punitive damages as allowed by law, costs, interest, attorneys' fees pursuant to 42 U.S.C. §1988, and trial by jury on all issues so triable.

24

DATED this  4th  day of June, 2026.

                                 Respectfully submitted,

                                 **MALLARD | PEREZ, PLLC**
                                 Attorneys for the Plaintiff
                                 889 N. Washington Blvd.
                                 Sarasota, FL 34236
                                 Telephone: (941) 952-1682
                                 Facsimile: (941) 378-1605

                                 /s/ Alan Perez

                                 _____

                                 Alan L. Perez, Esq.
                                 FBN: 0060409
                                 Amanda F. Davy, Esq.
                                 FBN: 98992
                                 Alan@mallardperez.com
                                 Amanda@mallardperez.com
                                 brittany@mallardperez.com

25